## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ISAIAH BIRTS** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIVIL ACTION FILE NO:** |
| **v.** | ) |
| | ) |
| **CLAYTON COUNTY, GEORGIA;** | ) |
| **SHERIFF LEVON ALLEN in his individual** | ) |
| **capacity;** | ) |
| **OFFICER T. CLIFTON, in her individual** | ) |
| **capacity:** | ) |
| **OFFICER K. D. BEAMAN, in their individual** | ) |
| **capacity; and** | ) |
| **Officer R. L. JONES, in their individual** | ) |
| **capacity.** | ) |
| **.** | ) |
| | ) **Jury Trial** |
| **Defendants.** | ) **Demanded** |

---

## COMPLAINT FOR DAMAGES

COMES NOW ISAIAH BIRTS, and, by and through undersigned counsel, hereby files this Complaint for Damages against Defendant Clayton County, Georgia, Defendant Sheriff Levon Allen, individually, Defendant Officer T. Clifton, individually, Defendant Officer K. D. Beaman, individually, and Defendant R. L. Jones, individually, respectfully showing the Court as follows:

### Preliminary Statement

1.

This is a civil action pursuant to 42 U.S.C. §1983 to redress deprivations, under color of state law, of Mr. Isaiah Birts's clearly established civil rights secured by the Eighth and Fourteenth Amendments to the United States Constitution as well as for state tort claims. Claims are hereby filed pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for civil rights violations, unsafe jail conditions, deliberate indifference, failure to protect, deliberate indifference to serious medical needs, cruel and unusual punishment, substantive due process violations, *Monell* unconstitutional customs, policies, and or practices violations, and supervisory liability. Claims are also filed under state tort law for negligence and gross negligence.

2.

This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction pursuant to the provisions of 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and by the laws of the State of Georgia, pursuant to 28 U.S.C. § 1367(a), because the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

**Parties**

3.

Plaintiff Isaiah Birts (hereinafter referred to as "Plaintiff") seeks to recover for claims against Defendants arising under federal and state law. Plaintiff is a resident of Georgia and consents to the venue of this Court.

4.

Defendant Clayton County, Georgia (hereinafter referred to as "Defendant Clayton County") is a political subdivision of the State of Georgia.

5.

Defendant Clayton County can be served by serving the Chairwoman of the Clayton County Board of Commissioners, Dr. Alieka Anderson-Henry, at her place of employment located at 112 Smith Street, Annex 1, Jonesboro, GA 30236, or by serving an agent authorized by appointment to receive service of process.

6.

Defendant Clayton County is the policy maker for determining the budget of the Clayton County Sheriff's Office.

7.

Defendant Sheriff Levon Allen, at all times relevant to this Complaint, was the elected Sheriff of Clayton County, Georgia, holding office by virtue of the constitution and laws of the State of Georgia, and was acting in the course and scope of his employment and under the color of law. Defendant Sheriff Levon Allen, (hereinafter referred to as "Defendant Allen") is sued herein in his individual

capacity for purposes of his actions and policies and training of law enforcement personnel under his control and supervision and for establishing a policy or pattern of widespread constitutional deprivations at the Clayton County Jail.

8.

Defendant Allen is the Policy Maker for the Clayton County Sheriff's Office.

9.

Defendant Allen can be served at his place of employment, the Clayton County Sheriff's Office, 9157 Tara Boulevard, Jonesboro, GA 30236.

10.

Clayton County and the Clayton County Sheriff's Office each receive some form of federal funding.

11.

Defendant Officer T. Clifton (hereinafter referred to as "Defendant Clifton") was at all relevant times an employee of the Clayton County Sheriff's Office and was acting under color of state law and was acting in the course and scope of her employment at the time the subject incident occurred.

12.

Defendant Clifton is a resident of Georgia and can be served at her place of employment or residence.

13.

Defendant Officer K. D. Beaman (hereinafter referred to as "Defendant Beaman") was at all relevant times an employee of the Clayton County Sheriff's Office and was acting under color of state law and was acting in the course and scope of their employment at the time the subject incident occurred.

14.

Defendant Beaman is a resident of Georgia and can be served at their place of employment or residence.

15.

Defendant Officer R. L. Jones (hereinafter referred to as "Defendant Jones") was at all relevant times an employee of the Clayton County Sheriff's Office and was acting under color of state law and was acting in the course and scope of their employment at the time the subject incident occurred.

16.

Defendant Jones is a resident of Georgia and can be served at their place of employment or residence.

17.

At all times mentioned in this Complaint, the Defendants acted jointly and in concert with each other. Each Defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other Defendants, but each Defendant

failed and refused to perform such duty, thereby proximately causing the injuries herein complained of.

## Jurisdiction & Venue

### 18.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all incidents and or occurrences giving rise to this action occurred in this District, some or all of the Defendants reside in this judicial district, and the events or omissions giving rise to these claims arose here.

### 19.

Defendants' conduct under color of state law proximately caused the deprivation of Plaintiff's federally protected rights and injuries.

### 20.

Jurisdiction supporting a claim for attorney fees and costs is conferred by 42 U.S.C. §§ 1983, 1988, the 14th and 8th Amendments to the United States Constitution, and relevant Georgia law.

### 21.

This action has been brought within 2 years of the subject incident.

### 22.

All claims which arise out of the facts and circumstances relating to the commission of the alleged crime committed in this case, the beating and stabbing

of Plaintiff, are tolled by operation of O.C.G.A. §9-3-99 from the date of the

commission of the alleged crime, May 25, 2023, until the prosecution of such

crime or act has become final or otherwise terminated.

23.

All public-entity notice provisions have been met in this case. An ante-litem

sent in this case is attached to this Complaint as Exhibit A.

24.

This Court has personal jurisdiction over Defendant Clayton County.

25.

This Court has personal jurisdiction over Defendant Allen.

26.

This Court has personal jurisdiction over Defendant Clifton.

27.

This Court has personal jurisdiction over Defendant Beaman.

28.

This Court has personal jurisdiction over Defendant Jones.

## **Facts Related to All Counts**

29.

In May of 2023, Plaintiff was a pre-trial detainee who was being held at

Clayton County Jail.

30.

Plaintiff was 22 years old and 5'4" 124 pounds and was arrested for non-violent charges.

31.

Defendant Clifton and Defendant Beaman moved Plaintiff from his housing unit to a high-risk unit in which violent inmates were openly wielding makeshift weapons, "popping locks", and roaming freely.

32.

Defendant Clifton and Defendant Beaman moved Plaintiff to a housing unit that was largely unsupervised and uncontrolled knowing the risks that the housing unit placed on Plaintiff, who was non-violent and small statured.

33.

Defendant Clifton and Defendant Beaman knew of the risks that this housing unit posed to Plaintiff because they worked around this housing unit before, knew of the inmates in this housing unit's violent proclivities, saw the makeshift knives which were wielded in this housing unit, and saw the defective locks in the housing unit.

34.

Defendant Clifton and Defendant Beaman knew Plaintiff was particularly at risk due to his small stature and his non-violent charges, which made him an easy target of abuse.

35.

In spite of these risks, Defendant Clifton and Defendant Beaman made deliberate decisions to place Plaintiff in this housing unit.

36.

Defendant Clifton and Defendant Beaman also failed to adequately supervise Plaintiff while he was in this housing unit and this caused Plaintiff to sustain stab wounds on May 25, 2025, but remain undiscovered until May 26, 2025, leading to a delay in medical care.

37.

After Plaintiff was placed in the high-risk housing unit, he was beaten and stabbed by 6 inmates between 15-20 times. Hereinafter referred to as "Incident".

38.

During the Incident, Plaintiff was punched and stabbed multiple times with sharpened fabricated shanks.

39.

During the Incident, Plaintiff was stabbed in the head, neck, face, kidney, legs, and back and needed medical attention from the attack

40.

After the Incident, Plaintiff remained undiscovered until at least the next day by Defendant Jones.

41.

Defendant Jones discovered Plaintiff at the section door bleeding with open wounds, suffering from signs of head trauma and with lacerations and contusions all over his body and face.

42.

When Defendant Jones discovered Plaintiff, Plaintiff requested medical help.

43.

Instead of taking Plaintiff to the hospital or calling for the paramedics for these serious injuries, Defendant Jones took Plaintiff to the infirmary.

44.

Upon information and belief, Plaintiff was discharged back to the general population on or about May 28, 2023, and was never taken to the hospital.

45.

Plaintiff suffered permanent injuries that will negatively affect the quality of his life.

46.

Plaintiff suffered from permanent and disfiguring injuries as a result of the Incident.

47.

Plaintiff incurred significant medical bills and will continue to incur medical bills in the future as a result of the Incident.

48.

The Incident has and will cause Plaintiff to suffer past, present, and future physical and mental pain and suffering.

49.

Plaintiff's past, present, and future quality of life as a result of the Incident has been significantly worsened, and his capacity to earn has been significantly diminished.

## **Additional Facts Related to Counts VI, VII, and IX**

50.

Upon information and belief, Defendant Clifton possessed a criminal history prior to and while working for the Clayton County Sheriff's Office.

51.

Upon information and belief, Defendant Clifton was arrested for Simple battery and Deprivation of a child in September of 1995, domestic disturbance in February of 2020, and theft by taking in March of 2020.

52.

Furthermore, while working for the Clayton County Sheriff's office,

Defendant Clifton was arrested for failure to appear after causing a car accident.

Because of this, Defendant Clifton was investigated for Conduct unbecoming of an

officer.

53.

Furthermore, directly after the Incident, Defendant Clifton was arrested for

giving contraband to inmates.

**Additional Facts Related to Counts VI, VII, VIII, and IX**

54.

The Clayton County Jail is the detention facility for people awaiting

resolution of criminal charges in Clayton County.

55.

The entities responsible for the Jail are the Clayton County Sheriff's Office

and Defendant Allen, which operates the Jail, and Defendant Clayton County,

which funds the Jail.

56.

The Clayton County Sheriff is Defendant Allen.

57.

Sheriff Allen won a runoff election in April to replace Sheriff Victor Hill, who began serving an 18-month sentence in an Arkansas prison in May for violating the civil rights of inmates by strapping them into restraint chairs as punishment.

58.

Allen, who Hill called his godson, was promoted from chief deputy to interim sheriff in late December.

59.

Five days before Sheriff Allen was elected, a Clayton grand jury issued a 64-count racketeering indictment against jail detainees, alleging they, along with others outside the building, coordinated to run the lockup as a mini-criminal enterprise involving the exchange of money, drugs, weapons and bribes.

60.

These charges were forwarded to the Clayton County District Attorney's Office, resulting in a 65-count indictment under the Racketeering Influenced and Corrupt Organizations Act (R.I.C.O.).

61.

All of the alleged crimes occurred under acting Sheriff Boehrer and interim Sheriff Levon Allen when he was running for office, but neither officer was charged in the indictment. Clayton District Attorney Tasha Mosley has said she

expects more charges as investigators dig deeper into the alleged activity, which she said includes ties to gangs.

62.

According to reports from around September 2023, Georgia's senior U.S. senator and Human Rights Subcommittee Chairman has called on the Department of Justice to open an investigation in the Clayton County Jail.

63.

Senator Jon Ossoff says he has heard several credible reports describing deplorable conditions inside the facility. According to Senator Ossoff, "This is a serious issue that requires immediate and high-level attention,". According to Senator Ossoff, "There are credible reports and significant evidence, in my view, that conditions in the jail are inhumane, are dangerous, and put lives at risk,".

64.

In a September 7th two-page letter to U.S. Attorney General Merrick Garland, the senator said conditions are at a dire and crucial position. Senator Ossoff's call for a federal probe came after the DOJ prosecuted then-Clayton County Sheriff Victor Hill, who was found guilty in October of 2022 of violating the civil rights of jail detainees.

65.

The Clayton County Board of Commissioners is the governing body for Clayton County.

66.

Through the Board of Commissioners, Clayton County is responsible for funding for the Jail and maintaining the Jail facilities.

67.

The County sets funding levels for the Sheriff's Office, but the Sheriff is an independent, elected official whose authority is defined in the Georgia constitution.

68.

During all relevant times, Defendant Clayton County has been aware of the unconstitutional living conditions at the Jail, the unacceptable levels of inmate-on-inmate violence, the widespread make-shift knife problem created by the crumbling infrastructure, and the severe understaffing levels.

69.

In spite of this knowledge, Defendant Clayton County has chosen to not sufficiently fund the Jail to increase staffing, perform maintenance and repair on the Jail, and otherwise fix the unconstitutionally infirm conditions at the Jail.

70.

The Jail, Defendant Allen, and Defendant Clayton County have come under fire for the mounting violence, overcrowding, and lack of appropriate care in the Clayton County Jail.

71.

**Failure to Supervise Jail Staff and Root out Corruption- Defendant Allen**

72.

Plaintiff was at constant risk of danger, serious personal injury, and death due to Defendant Allen's failure to staff and train the Clayton County Jail Detention Officers and Staff to protect detainees from attacks by other detainees.

73.

Tragically, this was not an isolated incident. Clayton County Jail has been engulfed in controversy over recent years-and its inmates have suffered as a result.

74.

The crimes committed by those arrested included crossing guard lines, extortion, aggravated assault, aggravated battery, kidnapping, possession of narcotics with the intent to distribute, possession of prohibited items by inmates, bribery, and others.

75.

At least eight employees were arrested at Clayton County Jail in 2023.

76.

On the same day that Plaintiff was attacked, two other jail employees were fired and arrested.

77.

On the same day that Plaintiff was attacked, another former officer, Sean Hollinshead was arrested and fired for orchestrating an attack on an inmate, in which the inmate was brutally and viciously beaten and stabbed by a group of inmates. Upon information and belief, Mr. Hollinshead was charged with violating the oath of a public officer, aggravated assault, criminal negligence, and criminal battery. In response to this incident, Sheriff Levon Allen said, "Inmate Hollinshead committed the offense of Criminal Negligence & Violation of his Oath when he knowingly, recklessly, and without disregard for the safety of the inmate placed him in a high-risk housing unit, causing the inmate to receive life-threatening injuries and did not render aid as the beating and stabbing were taking place".

78.

Upon information and belief, earlier in May of 2023, a guard named Desiree Lowery was accused of smuggling contraband to detainees.

79.

In one month in 2023, contractor Iyana Dixon was charged with swiping a detainee's credit card while shopping at Macy's. A fellow contractor, Sarai Ali, was

also arrested and charged with being a party to the crime and obstructing or hindering law enforcement officers.

80.

In one month in 2023, jail nurse Geraldine Layura Moore was accused of dropping a plastic bag of Percocet pills in a trash bin for detainees to retrieve. Ms. Moore was arrested and charged with crossing a guard line with drugs, violation of Georgia's controlled substance act, drug possession, possession of a firearm during the commission of a crime and possession of drug related objects.

81.

In one month in 2023, Clayton County Correctional Officer Jalen Clausell facilitated an assault on an inmate by allowing the assaulting inmates to have access to the victim inmate's cell.

82.

According to the investigation, the inmates planned to cause "physical bodily injury" to the victim, and Clausell intentionally let the inmates into the cell to hurt the victim.

83.

According to reports in one month in 2023, a Clayton County Sheriff's correctional officer Delvan Jones allegedly struck an inmate seven times unprovoked at the Clayton County Jail.

84.

Mr. Jones faced two separate charges for his crimes, and his POST record showed he took courses in de-escalation techniques and use of force in 2022. He was the second Clayton County correctional officer to face charges in that month and the ninth Clayton County Jail correctional officer or employee charged with a crime while on the job in the past six months at the time of his attack.

85.

Not only has Clayton County been subject to potential as well as ongoing investigations, but it has also been subject to prior litigation by inmates.

86.

According to reports, the family of a man who died in the Clayton County Jail in November 2022 filed a lawsuit against Clayton County, Sheriff Levon Allen, multiple deputies, and medical providers after multiple deputies placed their full body weight on the man for 20 minutes leading to his death. The Clayton County Medical Examiner's Office determined that the man suffered a cardiac arrest and ruled his death a homicide. The deputies involved were later fired, but they were not indicted in inmate's death.

**<u>Pervasive Violence and Deficient Security Practices- Defendant Allen and Defendant Clayton County</u>**

87.

Incidents of violence were something close to the norm at Clayton County Jail. Numerous inmates have been attacked at the jail.

88.

Violent acts by incarcerated people against other incarcerated people in the Jail include homicides, stabbings, and sexual abuse. Plaintiff was a victim of this violence.

89.

Killings, stabbings, and assaults are common in the Jail. Plaintiff was a victim of assault and stabbing at the Jail.

90.

Assaults and stabbings with man-made "shanks" are a feature of life at the Jail. Plaintiff was stabbed with a man-made shank at the Jail.

91.

In some cases, officers have allowed or initiated violence at the Jail.

92.

Poor supervision, Jail maintenance, contraband control, and investigations contribute to the unacceptable violence at the Jail. Such supervision, jail maintenance, contraband control, and investigations led to the attacks onto Plaintiff.

93.

Inadequate supervision puts incarcerated people at substantial risk of serious harm from violence and can violate their constitutional rights, especially when other conditions like easy access to weapons contribute to the danger.

94.

Clayton County Jail staff, due to the supervision, direction, training, custom, and policy of Defendant Allen as well as the understaffing and budgeting practices of Defendant Clayton County, are rarely present in the housing units and do not perform adequate security rounds or otherwise monitor people to prevent harm. This practice allowed Plaintiff to be ganged up on and attacked as well as remain undiscovered until the next day.

95.

As a result, staff fail to intervene to stop violence between incarcerated people and often fail to promptly respond to violent incidents.

96.

As a result, staff are left unsupervised and their power goes unchecked, leading to abuse.

97.

Defendant Allen and Defendant Clayton County are aware of the violence in the Jail and have publicly decried it. Yet they have failed to take adequate action to

address the crisis, and homicides, stabbings, and other violent acts which continue at dangerous levels.

98.

The Jail, due to the supervision, direction, custom, and policy of Defendant Allen as well as the understaffing and budgeting practices of Defendant Clayton County, regularly operates without enough security staff to provide appropriate supervision and prevent violence.

99.

Violence occurs as a direct result of the understaffing, which is caused by Defendant Clayton County's budgetary practices as well as Defendant Allen's management of the budget and other policies, customs, and procedures.

100.

According to reports from around January of 2023, five Clayton County inmates were facing charges after a cellphone video surfaced of them allegedly attacking another inmate in what believed to be a gang-related incident. The video, which showed inmates 'jumping and assaulting'' the victim, was brought to the attention of Sheriff Levon Allen by the victim's mother.

101.

Clayton County Sheriff Levon Allen said in a press release in November of 2023 that inmate Jaquez Jackson "brutally beat his cell mate with his bare hands,

viciously punching, kicking and slamming his head on the toilet, murdering him simply because of the color of his skin."

102.

The cellmate was Carlos Zegarro-Arroyo, who was in jail on non-violent charges. According to the sheriffs office, Jackson stated several times he did not like Mexican/Hispanic and wanted to kill them. Jackson was charged with murder, malice murder, aggravated assault and starting a penal riot, according to the sheriffs office.

103.

An Inmate Jonathan Pettigrew was killed in his cell at Clayton County which was overcrowded. The inmate that killed him was moved into a cell that Johnathan already shared with another inmate due to overcrowding, they believe this caused his death.

104.

Cordero Riley got a severe beating when his cell lock malfunctioned. A guard did not discover him until several hours later when he was nearing death. He was taken to the infirmary where the medical staff gave him Motrin and ice, even after his pleas to be sent to the emergency room. This persisted for several days. He was taken to the hospital a week later when he was released and found out he had a collapsed lung, left rib fracture, and a head injury.

105.

On the same day of Plaintiff's attack, Tyler Thompson was attacked and stabbed by multiple inmates after he was set up by a correctional officer and he did not received sufficient medical care afterwards.

106.

Inmates Reeves and Roddy were both charged prior to Plaintiff's Incident in the stabbing case involving Inmate Joshua Shubrich when a Clayton County officer placed Inmate Shubrich in HU-8 Sec-4 (See case 2023-144001).

107.

Also, Inmate Reeves, Inmate Jones, and Inmate Bou were charged prior to Plaintiff's Incident in the stabbing case involving Inmate Ralph Perry when Officers placed Inmate Perry in HU-8 Sec-4 (See case 2023-090010).

108.

Defendant Clayton County and Defendant Allen had actual and constructive knowledge of widespread, constitutional violations occurring at the Jail, including the persistent pattern of inmate-on-inmate violence at the jail.

**<u>Poor Maintenance and Pervasive Contraband- Defendant Allen and Defendant Clayton County</u>**

109.

Poor maintenance and pervasive contraband, caused by the supervision, direction, custom, and policy of Defendant Allen, as well as the budgeting practices of Defendant Clayton County, contribute to the violence at the Jail.

110.

Plaintiff was put at constant risk of danger, serious personal injury, and death due to Clayton County Jail's crumbling infrastructure, which inmates use to craft makeshift knives, called "shanks," for use as weapons. Such shanks were used in the Incident to harm and maim Plaintiff.

111.

Plaintiff was at constant risk of danger, serious personal injury, and death due to Defendant Allen's failure to restrict access away from parts of the jail containing readily available materials for crafting shanks. Such shanks were used in the Incident to harm and maim Plaintiff.

112.

Poor supervision, jail maintenance, and security practices, caused by the supervision, direction, custom, and policy of Defendant Allen as well as the budgeting practices of Defendant Clayton County, contribute to a large amount of contraband, including weapons and drugs, and unsafe facilities. The result is a highly dangerous jail.

113.

Defendant Allen and Defendant Clayton County are aware of the danger these conditions pose to incarcerated people, but have failed to take adequate action to make the facility safe. These failures led to the attack onto Plaintiff.

114.

Unmaintained parts of the Jail, caused by the supervision, direction, custom, and policy of Defendant Allen as well as the budgeting practices of Defendant Clayton County, jeopardize inmate safety.

115.

Due to poor maintenance by Defendant Allen and Defendant Clayton County and inadequate supervision by Defendant Allen, the Jail itself is a source of dangerous weapons and exposes people to violence. These failures led to the attack onto Plaintiff.

116.

Defendant Allen's failure to investigate officers bringing in and hiding contraband as well as inmates stockpiling of contraband led to the attack onto Plaintiff.

117.

Defendant Allen and Defendant Clayton County are aware of the dangers caused by the facility's poor condition, including providing materials for weapons.

118.

Defendant Allen does not take appropriate measures to prevent the movement of contraband, including man-made shanks that were used in the Incident, described above, into and around the Jail.

119.

Clayton County Jail opened in 2000, and it's been deteriorating ever since. According to former corrections officer, Dalton Lowery, "When I tell you it's bad, there are doors wide open. There are individuals who can be attacked on site, whether you have an officer there or not,".

120.

Clayton County Jail was experiencing severe overcrowding problems during all relevant times to Plaintiff's attack.

121.

The Clayton County Jail, during relevant times, housed approximately 1900 inmates, which is nearly 200-400 inmates over capacity, placing inmates on the floor and three in each cell. According to Sheriff Allen, "We can house comfortably two inmates to a bed, about 1,500 to 1,540 inmates," and "Our daily capacity is roughly about 1,800 to 1,900 inmates."

122.

Clayton County Jail also experiences systematic problems with homemade as well as smuggled weapons.

123.

As of 2023, according to Sheriff Allen, "All of our stabbings that have occurred based on something they have broken away from the actual facility,".

124.

According to Sheriff Allen, while holding a grab bar in the bathroom, "The inmates were able to manipulate this from the handicapped room in the showers,".

125.

Sheriff Allen continued, "When you remove this and work this on the wall, this becomes a long sword, a long machete,"

126.

And the contraband isn't just from inside the jail. According to Allen, after asserting that people would then break into the jail to give inmates contraband, he said, "Like Mission Impossible, they were able to cut the glass, poke the hole through and have a hole,". Aside from the communal areas inside the jail, the door locks and cells also show age.

127.

Poor security practices contribute to the large amounts of contraband, including man-made shanks that were used in the Incident described above, that move into and about the Jail.

128.

Jail staff do not conduct adequate security rounds to identify and remove contraband, including man-made shanks that were used in the incident described above.

129.

Planned housing searches are not conducted with necessary frequency, and searches of incarcerated people, including pat searches, are not conducted appropriately.

130.

Corrupt staff are also a significant source of contraband at the Jail.

131.

Multiple staff members have been arrested for trafficking contraband into the Jail.

**Failures to Investigate and Correct Violence- Defendant Allen**

132.

The Jail, as a result of the supervision, direction, and custom, of Defendant Allen has inadequate systems for identifying, investigating, and preventing violence.

133.

Given the amount of violence at the Jail, procedures to identify dangerous circumstances and investigate misconduct are critical.

134.

The Jail, as a result of the supervision and custom of Defendant Allen, does not meaningfully respond to complaints from incarcerated people, does not investigate the root causes of violence in the Jail, and does not implement corrective action plans to improve safety.

135.

The Jail, as a result of the supervision and customs of Defendant Allen, does not use quality investigations and corrective action planning to identify dangerous situations and avoid violence.

136.

After an incident of serious violence occurs or when jail staff are alerted to a potential for serious violence, sound correctional practice includes a thorough investigation to identify the source of the violence, determine what led to the violence or threats, and identify corrective actions.

137.

Corrective actions may include increasing staffing, addressing blind-spots, counseling staff to improve the quality of security rounds, re-balancing the mix of different gangs on a housing zone, and identifying the source of involved contraband.

138.

Without such investigations and corrective actions, staff cannot adequately identify or respond to patterns of violence and prevent it from recurring.

139.

When Jail staff do investigate allegations of violence, the investigations are minimal.

140.

These investigations at the Jail lack an effort to understand the precipitating factors to violence, follow-up on leads that might connect the violence to other misconduct, findings, and proposed corrective actions to help avoid future violence.

**Deficient Medical Care- Defendant Allen and Defendant Clayton County**

141.

Gross deficiencies in Clayton County Jail's provision of medical care exposed Plaintiff to an increased risk of injury, serious illness, pain and suffering, mental health decline, and death.

142.

Defendant Allen and Defendant Clayton County fail to provide constitutionally adequate medical care to people at the Jail.

143.

Gross deficiencies in the Jail's provision of medical care, as a result of the supervision, training, and custom of Defendant Allen as well as the budgeting practices of Defendant Clayton County, expose incarcerated people to an increased risk of injury, serious illness, pain and suffering, mental health decline, and death.

144.

Unsafe Jail conditions, caused by Defendant Allen's and Defendant Clayton County's actions, restrict access to medical care and lead to constitutionally deficient care. Plaintiff's medical treatment during and after the Incident suffered as a result.

145.

The conditions in the Jail—including high levels of violence, poor supervision, poor management, and an inadequately maintained facility—unreasonably impede incarcerated people with serious medical and mental health needs from accessing necessary care. Plaintiff's medical treatment during and after the Incident suffered as a result.

146.

Defendant Allen and Defendant Clayton County are aware of the inadequate medical and mental health care in the Jail but have failed to take reasonable measures to improve care.

147.

Conditions in the Jail obstruct the delivery of medical care. Plaintiff's medical treatment during and after the Incident suffered as a result.

148.

Many of these issues stem from Defendant Allen's and Defendant Clayton County's failure to provide a reasonably safe facility in which incarcerated people have appropriate access to care.

149.

Constitutionally inadequate medical care already has led to serious injury and death, and it continues to pose a substantial risk of serious harm to people incarcerated in the Jail.

150.

The Jail, as a result of the supervision, training, and custom of Defendant Allen fails to provide appropriate medical aid in life-or-death situations.

151.

Jail and medical staff have an obligation to respond to people experiencing medical emergencies in the Jail.

152.

When deputies or detention officers encounter an incarcerated person experiencing a medical emergency, they should notify medical staff and provide a basic first-responder level of care.

153.

This includes, as appropriate, starting CPR, applying bandages to wounds, using an automated external defibrillator (AED), administering naloxone, or placing the patient in a recovery position to open the airway.

**Budgetary Facts- Defendant Allen and Defendant Clayton County**

154.

The Clayton County Board of Commissioners have failed to adequately fund the Clayton County Jail to provide sufficient space and safety for the inmates housed there.

155.

Sheriff Allen has failed to properly manage the budget provided to him.

156.

Clayton County Sheriff Levon Allen spent millions of dollars on a fleet of electric cars instead of spending the money on much needed jail repairs.

157.

Sheriff Allen and Clayton County have instituted a policy of widespread constitutional deprivations at the Clayton County Jail resulting in unacceptable and unconstitutional levels of inmate-on-inmate violence.

158.

Sheriff Allen and Clayton County are aware of the substantial risk of danger the Clayton County Jail poses to inmates, but they have been deliberately indifferent to such risks.

159.

The budgeting issues at the Clayton County Jail, attributable to both Clayton County and Sheriff Allen, has resulted in understaffing, overcrowding, poor training of jail staff, poor recruitment, widespread contraband and scandal, and widespread violence and constitutional deprivations at the Clayton County Jail.

160.

The widespread pattern of constitutional deprivations at Clayton County Jail led directly to the attacks onto Plaintiff.

**COUNT I**
**Section 1983 Claims under Fourteenth & Eighth Amendments: Violation of Substantive Due Process; Deliberate Indifference to Known Substantial Risk of Serious Harm; Failure to Protect; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment**
**(Against Defendant Clifton, Individually)**

161.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-49 of the instant Complaint as if fully set forth herein verbatim.

162.

There was a substantial risk of serious harm to Plaintiff as there was an excessive risk of inmate-on-inmate violence at the Jail where violence and terror

reign. Inmate-on-inmate violence was the norm or something close to it as evidenced by the numerous stabbings at the Jail.

163.

There was a substantial risk of serious harm to Plaintiff leading up to and during the Incident as indicated by the fact that Plaintiff was placed in a high-risk unit in which violent inmates were openly wielding makeshift weapons, "popping locks", and roaming freely

164.

There was a substantial risk of serious harm to Plaintiff leading up to and during the Incident as indicated by the fact that Plaintiff was placed in a high-risk unit that was largely unsupervised and uncontrolled knowing the risks that the housing unit placed on Plaintiff, who was non-violent and small statured

165.

Defendant Clifton actually knew of that risk of serious harm because she worked around this housing unit before, knew of the inmates in this housing unit's violent proclivities, saw the makeshift knives which were wielded in this housing unit, and saw the defective locks in the housing unit, among other things. Defendant Clifton also knew Plaintiff was particularly at risk due to his small stature and his non-violent charges, which made him an easy target of abuse, among other things.

166.

Defendant Clifton, individually, was deliberately indifferent to and disregarded the risks posed to Plaintiff leading up to and during the incident and failed to keep Plaintiff reasonably safe by intentionally placing Plaintiff in this high-risk housing unit in spite of the substantial risks as well as also failing to adequately supervise Plaintiff while he was in this housing unit. This caused Plaintiff to sustain stab wounds on May 25, 2025, but remain undiscovered until May 26, 2025, leading to a delay in medical care.

167.

Defendant Clifton, individually, was deliberately indifferent to and disregarded the risks posed to Plaintiff during the Incident and failed to keep Plaintiff reasonably safe by placing Plaintiff in this high-risk housing unit and failing to supervise the inmates in this housing unit.

168.

Defendant Clifton knowingly failed to take reasonable steps to protect Plaintiff from violence at the hands of other inmates who posed a substantial risk of serious harm to Plaintiff leading up to and during the Incident as described above. Defendant Clifton could have not placed Plaintiff in the dorm with the armed violent inmates and could have supervised the inmates in this housing unit.

169.

During and leading up to the Incident, Defendant Clifton possessed subjective knowledge that by placing Plaintiff in a housing zone with armed and violent inmates and by failing to supervise these inmates, she was placing Plaintiff at a substantial risk of serious harm.

170.

Defendant Clifton had subjective knowledge of the risks of serious harm to Plaintiff as evidenced by the fact that she worked around this housing unit before, knew of the inmates in this housing unit's violent proclivities, saw the makeshift knives which were wielded in this housing unit, and saw the defective locks in the housing unit, among other things. Defendant Clifton also knew Plaintiff was particularly at risk due to his small stature and his non-violent charges, which made him an easy target of abuse, among other things.

171.

Defendant Clifton disregarded the substantial risk of serious harm to Plaintiff as evidenced by the fact that she intentionally placed Plaintiff in this high-risk housing unit in spite of the substantial risks as well as also failed to adequately supervise Plaintiff and the inmates while he was in this housing unit. This caused

Plaintiff to sustain stab wounds on May 25, 2025, but remain undiscovered until May 26, 2025, leading to a delay in medical care.

172.

Plaintiff was attacked and stabbed by other inmates as a result of Defendant Clifton's deliberate indifference.

173.

As indicated above, Defendant Clifton's conduct was subjectively reckless.

174.

There is an affirmative causal connection between Defendant Clifton's conduct and the constitutional deprivations described herein. Defendant Clifton's failure to protect as described herein caused Plaintiff's injuries, and Plaintiff's injuries were a foreseeable consequence of Defendant Clifton's failure to protect.

175.

Defendant Clifton's failures to take reasonable action to protect Plaintiff from known risks of serious harm amounted to deliberate indifference and a failure to protect in violation of the Fourteenth and Eighth Amendments and proximately caused Plaintiff physical and mental pain and suffering, extreme mental distress,

serious bodily injury, disfigurement, violations of constitutionally protected rights, medical bills, and other general and special damages.

176.

Defendant Clifton is not entitled to qualified immunity because her conduct violated the basic legal principle that "A prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which the official is subjectively aware,* exists and the official does not respond reasonably to the risk.". *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014).

177.

Defendant Clifton is not entitled to qualified immunity as indicated by cases such as *Caldwell v. Warden*, FCI Talladega, 748 F.3d 1090 (11th Cir. 2014), *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), and others.

178.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation, shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

## COUNT II
### Section 1983 Claims under Fourteenth & Eighth Amendments: Violation of Substantive Due Process; Deliberate Indifference to Known Substantial Risk of Serious Harm; Failure to Protect; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment
### (Against Defendant Beaman, Individually)

179.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-49 of the instant Complaint as if fully set forth herein verbatim.

180.

There was a substantial risk of serious harm to Plaintiff as there was an excessive risk of inmate-on-inmate violence at the Jail where violence and terror reign. Inmate-on-inmate violence was the norm or something close to it as evidenced by the numerous stabbings at the Jail.

181.

There was a substantial risk of serious harm to Plaintiff leading up to and during the Incident as indicated by the fact that Plaintiff was placed in a high-risk unit in which violent inmates were openly wielding makeshift weapons, "popping locks", and roaming freely

182.

There was a substantial risk of serious harm to Plaintiff leading up to and during the Incident as indicated by the fact that Plaintiff was placed in a high-risk

unit that was largely unsupervised and uncontrolled knowing the risks that the housing unit placed on Plaintiff, who was non-violent and small statured.

183.

Defendant Beaman actually knew of that risk of serious harm because they worked around this housing unit before, knew of the inmates in this housing unit's violent proclivities, saw the makeshift knives which were wielded in this housing unit, and saw the defective locks in the housing unit, among other things. Defendant Beaman also knew Plaintiff was particularly at risk due to his small stature and his non-violent charges, which made him an easy target of abuse, among other things.

184.

Defendant Beaman, individually, was deliberately indifferent to and disregarded the risks posed to Plaintiff leading up to and during the incident and failed to keep Plaintiff reasonably safe by intentionally placing Plaintiff in this high-risk housing unit in spite of the substantial risks as well as also failing to adequately supervise Plaintiff while he was in this housing unit. This caused Plaintiff to sustain stab wounds on May 25, 2025, but remain undiscovered until May 26, 2025, leading to a delay in medical care.

185.

Defendant Beaman, individually, was deliberately indifferent to and disregarded the risks posed to Plaintiff during the Incident and failed to keep Plaintiff reasonably safe by placing Plaintiff in this high-risk housing unit and failing to supervise the inmates in this housing unit.

186.

Defendant Beaman knowingly failed to take reasonable steps to protect Plaintiff from violence at the hands of other inmates who posed a substantial risk of serious harm to Plaintiff leading up to and during the Incident as described above. Defendant Beaman could have not placed Plaintiff in the dorm with the armed violent inmates and could have supervised the inmates in this housing unit.

187.

During and leading up to the Incident, Defendant Beaman possessed subjective knowledge that by placing Plaintiff in a housing zone with armed and violent inmates and by failing to supervise these inmates, they were placing Plaintiff at a substantial risk of serious harm.

188.

Defendant Beaman had subjective knowledge of the risks of serious harm to Plaintiff as evidenced by the fact that they worked around this housing unit before, knew of the inmates in this housing unit's violent proclivities, saw the makeshift knives which were wielded in this housing unit, and saw the defective locks in the

housing unit, among other things. Defendant Beaman also knew Plaintiff was particularly at risk due to his small stature and his non-violent charges, which made him an easy target of abuse, among other things.

189.

Defendant Beaman disregarded the substantial risk of serious harm to Plaintiff as evidenced by the fact that they intentionally placed Plaintiff in this high-risk housing unit in spite of the substantial risks as well as also failed to adequately supervise Plaintiff and the inmates while he was in this housing unit. This caused Plaintiff to sustain stab wounds on May 25, 2025, but remain undiscovered until May 26, 2025, leading to a delay in medical care.

190.

Plaintiff was attacked and stabbed by other inmates as a result of Defendant Beaman's deliberate indifference.

191.

As indicated above, Defendant Beaman's conduct was subjectively reckless.

192.

There is an affirmative causal connection between Defendant Beaman's conduct and the constitutional deprivations described herein. Defendant Beaman's failure to protect as described herein caused Plaintiff's injuries, and Plaintiff's injuries were a foreseeable consequence of Defendant Beaman's failure to protect.

193.

Defendant Beaman's failures to take reasonable action to protect Plaintiff from known risks of serious harm amounted to deliberate indifference and a failure to protect in violation of the Fourteenth and Eighth Amendments and proximately caused Plaintiff physical and mental pain and suffering, extreme mental distress, serious bodily injury, disfigurement, violations of constitutionally protected rights, medical bills, and other general and special damages.

194.

Defendant Beaman is not entitled to qualified immunity because their conduct violated the basic legal principle that "A prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which the official is subjectively aware,* exists and the official does not respond reasonably to the risk.". *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014).

195.

Defendant Beaman is not entitled to qualified immunity as indicated by cases such as *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090 (11th Cir. 2014), *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016), and others.

196.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation, shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

## COUNT III
### Section 1983 Claims under Fourteenth & Eighth Amendments: Violation of Substantive Due Process; Deliberate Indifference to Known Substantial Risk of Serious Harm; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment; Deliberate Indifference to Serious Medical Needs
### (Against Defendant Jones, Individually)

197.
Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-49 of the instant Complaint as if fully set forth herein verbatim.

198.

Plaintiff suffered from an objectively serious medical need after the attack, as he suffered from multiple lacerations and puncture wounds from dirty makeshift knives, and suffered from head trauma, among other things.

199.

Defendant Jones was deliberately indifferent to Plaintiff's serious medical needs from the attack and Defendant Jones's response to Plaintiff's injuries was

objectively insufficient, because even though Plaintiff presented to him bleeding out of open wounds and after suffering from stab wounds from dirty makeshift knives as well as lacerations and contusions all over his body and face, Defendant Jones did not call for Plaintiff to be taken to the hospital.

200.

Defendant Jones had subjective awareness of the facts signaling the need for medical attention as Plaintiff's beating was brutal, Plaintiff suffered from bleeding open wounds, and Plaintiff suffered from obvious signs of severe head trauma.

201.

Required action by Defendant Jones upon learning of Plaintiff's condition would be to have Plaintiff taken to a hospital. However, Plaintiff was not taken to the hospital for his serious medical condition.

202.

Defendant Jones's refusal and failure to have Plaintiff properly cared for caused Plaintiff's constitutional deprivations and caused Plaintiff to suffer prolonged pain and suffering associated with his injuries as well as delayed recovery.

203.

Defendant Jones is not entitled to qualified immunity for their conduct upon discovering Plaintiff because they had more than fair warning that their conduct

was unconstitutional in not taking Plaintiff to the hospital or calling for an

ambulance after Plaintiff presented with bleeding open wounds and with obvious

signs of severe head trauma, as indicated by *Aldridge v. Montgomery*, 753 F.2d

970 (11th Cir. 1985) and more.

204.

Defendant Jones is not entitled to qualified immunity for their conduct as

their deliberate indifference to serious medical needs violated the basic legal

principle that "[e]ven where medical care is ultimately provided, a prison official

may nonetheless act with deliberate indifference by delaying the treatment of

serious medical needs, even for a period of hours, though the reason for the delay

and the nature of the medical need is relevant in determining what type of delay is

constitutionally intolerable." *McElligott*, 182 F.3d at 1255.

205.

As a result of the wrongful conduct described above, Plaintiff suffered from

permanent injuries, disfiguring injuries, physical and mental pain and suffering,

extreme mental and emotional distress, humiliation, shock, and fright, medical

bills, violations of constitutionally protected rights, lost capacity to earn, and other

general and special damages.

**COUNT IV**
**<u>State Law Claims for Negligence and Gross Negligence</u>**
**<u>(Against Defendant Clifton, Individually, and Defendant Beaman,</u>**
**<u>Individually)</u>**

Page **48** of **76**

206.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-49 of the instant Complaint as if fully set forth herein verbatim.

207.

Defendant Clifton and Defendant Beaman owed a duty to Plaintiff not to expose Plaintiff to unreasonable risks of harm, and not to violate the written policies of the Clayton County Jail with reckless disregard.

208.

Defendant Clifton and Defendant Beaman owed a duty to Plaintiff to humanely treat Plaintiff, provide necessary medical care to Plaintiff, and ensure the safety and health of Plaintiff.

209.

Defendant Clifton and Defendant Beaman breached their duties to Plaintiff when they exposed Plaintiff to unreasonable risks of harm and violated the written policies of the Clayton County jail with reckless disregard and were negligent in the performance of their ministerial duties. Such negligence includes but is not limited to:

    a.  Failure to follow policies on placement of inmates;

    b.  Placement of Plaintiff in a dorm which presented an unjustifiable risk of harm to him;

    c.  Failure to confiscate and search for makeshift knives in Plaintiff's dorm;

    d.  Failure to perform security rounds;

    e.  Failure to report incidents of violence; and

    f.  Failure to supervise the inmates in Plaintiff's dorm;

## 210.

Defendant Clifton and Defendant Beaman failed to exercise even a slight degree of care and had such a lack of diligence that even careless people are accustomed to exercise when they committed the acts and omissions described in this Count.

## 211.

Defendant Clifton's and Defendant Beaman's negligence and gross negligence proximately and in fact caused Plaintiff to be assaulted and stabbed by the assaulting inmates and suffer from worse medical injuries due to delayed medical treatment, among other things.

## 212.

Defendant Clifton and Defendant Beaman are not entitled to official immunity as public officers or employees with respect to the negligence and gross

negligence described herein because their tortious acts were ministerial in nature, and said Defendants performed them negligently.

213.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation, shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

## COUNT V
### State Law Claims for Negligence and Gross Negligence
### (Against Defendant Jones, Individually)

214.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-49 of the instant Complaint as if fully set forth herein verbatim.

215.

Defendant Jones owed a duty to Plaintiff not to expose Plaintiff to unreasonable risks of harm and not to violate the written policies of the Clayton County Jail with reckless disregard.

216.

Defendant Jones owed a duty to Plaintiff to humanely treat Plaintiff, provide necessary medical care to Plaintiff, and ensure the safety and health of Plaintiff.

217.

Defendant Jones breached their duties to Plaintiff when they exposed Plaintiff to unreasonable risks of harm and violated the written policies of the Clayton County jail with reckless disregard and were negligent in the performance of their ministerial duties. Such negligence includes but is not limited to:

a. Defendant Jones's failure to call for a paramedic for Plaintiff after Plaintiff had been stabbed several times, was bleeding out of open wounds, and suffering from signs of head trauma;

b. Defendant Jones's failure to have Plaintiff taken to the hospital after Plaintiff had been stabbed several times, was bleeding out of open wounds, and suffering from signs of head trauma; and

c. Defendant Jones's failure to follow policies on the provision of medical care in emergency situations.

218.

Defendant Jones failed to exercise even a slight degree of care and had such a lack of diligence that even careless people are accustomed to exercise when they committed the acts and omissions described in this Count.

219.

Defendant Jones's negligence and gross negligence proximately and in fact caused Plaintiff to suffer from worse medical injuries due to deficient medical treatment, among other things.

220.

Defendant Jones is not entitled to official immunity as a public officer or employee with respect to the negligence and gross negligence described herein because their tortious acts were ministerial in nature, and Defendant Jones performed them negligently.

221.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation, shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

### COUNT VI
### Section 1983 Claims under Fourteenth & Eighth Amendments:
### Pattern of Violations of Substantive Due Process; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment; Failure to Train and Address Unconstitutional Customs and Practices; Supervisory Claims
### (Against Defendant Allen)

222.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-160 of the instant Complaint as if fully set forth herein verbatim.

223.

Defendant Allen is the elected Sheriff of Clayton County, Georgia, holding office by virtue of the constitution and laws of the State of Georgia, and was acting in the course and scope of his employment and under the color of law at all times relevant hereto and is sued herein in his individual capacity for purposes of his actions, policies, customs and training of law enforcement personnel under his control and supervision and for establishing a policy or pattern of widespread constitutional deprivations at the Clayton County Jail.

224.

Plaintiff had a right to be protected from cruel and unusual punishment under the substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is analyzed under the Eighth Amendment right to be free from cruel and unusual punishment and the unreasonable risks of harm. Plaintiff also had a right to be protected from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The Eighth Amendment prevented the Defendants from exercising deliberate indifference toward Plaintiff's safety, security, and constitutional rights.

225.

Plaintiff's constitutional rights were violated by Defendant Allen's subordinates, which include Defendant Clifton, Defendant Beaman, and Defendant Jones, as he was subjected to the unconstitutional conditions described in this Complaint, the attacks which injured and maimed him, and the constitutionally deficient medical care he received afterwards.

226.

There was a history of widespread abuse that was obvious, flagrant, rampant, and of continued duration with regards to pervasive inmate-on-inmate violence, the free flow of contraband, the dilapidation of the Jail, insufficient medical care, overcrowding, failures to investigate and correct violence, deficient security practices, and compromised correctional officers, among other things, that put Defendant Allen on notice of the need to take action and he failed to do so

227.

Defendant Allen has authority and responsibility over the governing of the Clayton County Jail and its operations and has the authority and responsibility of implementing policies and procedures for the Jail.

228.

Defendant Allen disregarded the known or obvious consequences of his actions. Facts supporting this contention are thoroughly described in allegations 50-160.

229.

Unconstitutional customs, supervision, practices and courses of conduct that
are so widespread that they have acquired the force of law, through repeated acts of
Defendant Allen related to the handling of detainees and or arrestees at Clayton
County Jail, inadequate security practices, failures to supervise jail staff, failures to
maintain jail structures and facilities, failures to investigate and correct incidents of
violence, failures to prevent inmate-on-inmate violence and the free flow of
contraband, failures to provide adequate medical services, failures to root out
corruption, and others are laid out in great detail in allegations 54-160. In those
allegations, the wrongful acts of each defendant are attributable and the policies are
thoroughly explained.

230.

Such customs, practices, and supervision created and carried out by Defendant
Allen constitute a persistent and wide-spread practice. Facts supporting this
contention are thoroughly discussed in allegations 50-160.

231.

Such customs, practices, and supervision created and carried out by Defendant
Allen constituted a deliberate indifference to the safety, security, and rights of
Plaintiff and exposed Plaintiff to unreasonable risks of harm. They also constituted
deliberate indifference to Plaintiff's substantial risks of serious harm and serious

medical needs. Such customs, practices, and supervision are described in great detail in allegations 54-160 and are incorporated herein. In those allegations, the wrongful acts of each defendant are attributable, and the customs, practices, and supervision are thoroughly explained.

232.

Defendant Allen disregarded the known or obvious consequences of his actions. Facts supporting this contention are thoroughly described in allegations 50-160.

233.

Defendant Allen's unconstitutional customs, practices, and supervision caused and were a moving force behind Plaintiff's constitutional deprivations and injuries, as Plaintiff was attacked and maimed by the make shift weapons, suffered due to a failure to supervise, was attacked and remained undiscovered because of a failure to maintain a security presence as well as a failure to conduct rounds, and received deficient medical treatment for his wounds, among other things.

234.

The U.S. Constitution imposes duties on jail officials, who must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

235.

The U.S. Supreme Court has made clear that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

236.

It is well established that "confinement in a prison where violence and terror reign is actionable." *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (*citing Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,* 400 F.3d 1313, 1320 (11th Cir.2005) (alteration in original) (internal quotation mark omitted)).

237.

Defendant Allen is not entitled to qualified immunity for his conduct in failing to maintain security policies, failing to investigate incidents of violence as well as failing to keep the Jail safe, secure, and failing to prevent inmate-on-inmate violence and the free flow of contraband, and failing to maintain a security presence as well as failing to ensure security rounds as indicated by cases such as *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993), *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579 (11th Cir. 1995), and others.

238.

As demonstrated above, the Jail is one of the most dangerous county jails in Georgia, and the violations of inmate's federally protected rights is so widespread,

persistent, and pervasive that calls for investigations into the jail have been heard to look into the prevalent violence, serious injuries, and homicides.

239.

Violence and terror reign at the Clayton County Jail to such an extent that the attacks onto Plaintiff are actionable under clearly established federal law.

240.

Defendant Allen had actual and constructive knowledge of a widespread, persistent pattern of inmate-on-inmate violence as well as of the other constitutional violations described herein.

241.

Defendant Allen has failed to properly manage the budget provided to him.

242.

Defendant Allen has instituted a policy of widespread constitutional deprivations at the Clayton County Jail resulting in unacceptable and unconstitutional levels of inmate-on-inmate violence.

243.

Defendant Allen is aware of the substantial risk of danger the Clayton County Jail poses to inmates, but he has been deliberately indifferent to such risks.

244.

The budgeting issues at the Clayton County Jail, attributable to Defendant Allen, has resulted in unreasonably dangerous overcrowding, understaffing, poor training of jail staff, poor recruitment, widespread contraband and scandal, and widespread violence and constitutional deprivations at the Clayton County Jail.

245.

The widespread pattern of constitutional deprivations at Clayton County Jail led directly to the constitutional conditions that Plaintiff endured as well as the attacks which Plaintiff was a victim of.

246.

Defendant Allen is not entitled to qualified immunity for his managing of the budget because he had more than fair warning that his conduct was unconstitutional as indicated by cases such as *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993), *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579 (11th Cir. 1995), and others.

247.

Wherefore, Plaintiff is entitled to recover under Section 1983 against Defendant Allen.

248.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation,

shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

## COUNT VII
### Section 1983 Claim under Fourteenth & Eighth Amendments:
### Violation of Substantive Due Process; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment; Personal Participation Supervisory Liability
### (Against Defendant Allen, Individually)

249.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-160 of the instant Complaint as if fully set forth herein verbatim.

250.

Defendant Allen is liable to Plaintiff for his failures to adequately supervise jail staff, including Defendant Clifton, regarding the attacks onto Plaintiff.

251.

Defendant Allen was subjectively aware of the actions and omissions of Defendant Clifton and her propensity to commit the acts which harmed and maimed Plaintiff. This is supported by the following facts:

a. Defendant Clifton possessed a criminal history prior to and while working for the Clayton County Sheriff's Office.

b. Upon information and belief, Defendant Clifton was arrested for Simple battery and Deprivation of a child in September of 1995, domestic disturbance in February of 2020, and theft by taking in March of 2020.

c. Furthermore, while working for the Clayton County Sheriff's office, Defendant Clifton was arrested for failure to appear after causing a car accident. Because of this, Defendant Clifton was investigated for Conduct Unbecoming of an Officer.

d. Furthermore, directly after the Incident, Defendant Clifton was arrested for giving contraband to inmates.

252.

Defendant Allen ratified the actions and omissions of Defendant Clifton by allowing Defendant Clifton to work in a dangerous zone unsupervised even though she already proved to not be capable of upholding the oath as a detention officer.

253.

Defendant Allen refused to take action to supervise Defendant Clifton, to actively intervene, deter, reasonably respond to and protect inmates from violence at the hands of other prisoners, which resulted in Plaintiff's injury, disfigurement, pain and suffering, constitutional deprivations, medical bills, and other harms and damages.

254.

Defendant Allen fostered an unreasonable environment of violence which motivated and encouraged inmates to commit violence against each other and which resulted in Plaintiff's injury, disfigurement, physical and emotional pain and suffering, extreme emotional distress, constitutional deprivations, medical bills, and other harms and damages.

255.

Defendant Allen's personal participation as described herein caused Plaintiff to be attacked and injured.

256.

The U.S. Constitution imposes duties on jail officials, who must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

257.

The U.S. Supreme Court has made clear that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

258.

It is well established that "confinement in a prison where violence and terror reign is actionable." *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014)

(*citing Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.,* 400 F.3d 1313, 1320

(11th Cir.2005) (alteration in original) (internal quotation mark omitted)).

259.

Defendant Allen is not entitled to qualified immunity for his conduct in

failing to supervise Defendant Clifton, failing to investigate corrupt officers, and

allowing Defendant Clifton to work unsupervised as indicated by cases such as

*LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993), *Hale v. Tallapoosa Cnty.*, 50

F.3d 1579 (11th Cir. 1995), and others.

260.

Violence and terror reign at the Clayton County Jail to such an extent that the

attacks onto Plaintiff are actionable under clearly established federal law.

261.

As a result of the wrongful conduct described above, Plaintiff suffered from

permanent injuries, disfiguring injuries, past, present, and future physical and mental

pain and suffering, extreme mental and emotional distress, humiliation, shock, and

fright, decreased earning capacity, past, present, and future medical bills, violations

of constitutionally protected rights, and other general and special damages.

## COUNT VIII
### Section 1983 Claim under Fourteenth & Eighth Amendments:
### Pattern of Violations of Substantive Due Process; Failure to Take Reasonable Measures to Guarantee Safety; Cruel and Unusual Punishment; Monell Claims; Improper Budgeting, Staffing, and Maintenance Practices
### (Against Defendant Clayton County)

262.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-160 of the instant Complaint as if fully set forth herein verbatim.

263.

Defendant Clayton County, Georgia, is the policy maker for determining the budget of the Clayton County Sheriff's Office.

264.

Plaintiff had a right to be protected from cruel and unusual punishment under the substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is analyzed under the Eighth Amendment right to be free from cruel and unusual punishment and the unreasonable risks of harm. Plaintiff also had a right to be protected from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The Eighth Amendment prevented the Defendants from exercising deliberate indifference toward Plaintiff's safety, security, and constitutional rights.

265.

Plaintiff's constitutional rights were violated as he was subjected to the unconstitutional conditions described in this Complaint, the attacks which injured and maimed him, and the constitutionally deficient medical care he received afterwards

266.

During all relevant times, Defendant Clayton County has been aware of the unconstitutional living conditions at the Jail, the unacceptable levels of inmate-on-inmate violence, the widespread make-shift knife problem created by the crumbling infrastructure, and the severe understaffing levels.

267.

In spite of this knowledge, Defendant Clayton County has chosen to not sufficiently fund the Jail to increase staffing, perform maintenance and repair on the Jail, and otherwise fix the unconstitutionally infirm conditions at the Jail.

268.

Unconstitutional failures to perform maintenance and appropriately staff Clayton County Jail, institution of unclean, unsafe, and unconstitutional living conditions, failures to maintain jail structures and facilities, and others which were created and effectuated by Defendant Clayton County are described in thorough detail in allegations 54-160 and are incorporated herein. In those allegations, the wrongful acts of each defendant are attributable, and the policies are thoroughly explained.

269.

Such policies, customs, practices, and staffing created and carried out by Defendant Clayton County constituted a persistent and wide-spread practice. Facts supporting this contention are thoroughly discussed in allegations 54-160.

270.

Such policies, customs, practices, and staffing created and carried out by Defendant Clayton County constituted a deliberate indifference to the safety, security, and rights of Plaintiff and exposed Plaintiff to unreasonable risks of harm. They also constituted deliberate indifference to Plaintiff's substantial risks of serious harm, living conditions, and serious medical needs.

271.

Defendant Clayton County disregarded the known or obvious consequences of its actions. Facts supporting this contention are thoroughly described in allegations 54-160.

272.

Defendant Clayton County's unconstitutional practices, failures to perform maintenance, and staffing caused and were a moving force behind Plaintiff's constitutional deprivations and injuries as Plaintiff was attacked and maimed by the makeshift weapons, was attacked while the Jail was short staffed, remained undiscovered until a day after his attack, and received deficient medical treatment for his wounds due to staffing issues, among other things.

273.

The U.S. Constitution imposes duties on jail officials, who must take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

274.

The U.S. Supreme Court has made clear that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

275.

It is well established that "confinement in a prison where violence and terror reign is actionable." *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (citing *Purcell ex rel. Estate of Morgan v. Toombs Cnty*., Ga., 400 F.3d 1313, 1320 (11th Cir.2005) (alteration in original) (internal quotation mark omitted)).

276.

As demonstrated above, the Jail is one of the most dangerous county jails in Georgia, and the violations of inmate's federally protected rights is so widespread, persistent, and pervasive that calls for investigations into the jail have been heard to look into the prevalent violence, serious injuries, and homicides.

277.

Violence and terror reign at the Clayton County Jail to such an extent that the attacks on Plaintiff are actionable under clearly established federal law.

278.

Defendant Clayton County had actual and constructive knowledge of widespread, persistent patterns of inmate-on-inmate violence as well as of the other constitutional violations described herein. This is supported by the fact that Defendant Clayton County had access to the data on makeshift weapons, assaults, stabbings, and homicides.

279.

The Clayton County Board of Commissioners have failed to adequately fund the Clayton County Jail to provide sufficient space and safety for the inmates housed there.

280.

Defendant Clayton County is aware of the substantial risk of danger the Clayton County Jail poses to inmates, but it has been deliberately indifferent to such risks. Facts supporting this contention are described in allegations 54-160.

281.

The budgeting issues at the Clayton County Jail, attributable to Clayton County, has resulted in unreasonably dangerous overcrowding, understaffing, poor

training of jail staff, poor recruitment, widespread contraband and scandal, and widespread violence and constitutional deprivations at the Clayton County Jail.

282.

The widespread pattern of constitutional deprivations at Clayton County Jail led directly to the attacks on Plaintiff.

283.

Wherefore, Plaintiff is entitled to recover under Section 1983 against Clayton County, Georgia.

284.

As a result of the wrongful conduct described above, Plaintiff suffered from permanent injuries, disfiguring injuries, past, present, and future physical and mental pain and suffering, extreme mental and emotional distress, humiliation, shock, and fright, decreased earning capacity, past, present, and future medical bills, violations of constitutionally protected rights, and other general and special damages.

**COUNT IX**
**Punitive Damages**
**(Against Defendant Allen, Individually, Defendant Clifton, Individually,**
**Defendant Beaman, Individually, and Defendant Jones, Individually)**

285.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-160 of the instant Complaint as if fully set forth herein verbatim.

286.

Defendant Allen's, Defendant Clifton's, Defendant Beaman's, and Defendant Jones's actions showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against the Defendants in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Defendants from repeating their conduct.

287.

Defendant Allen's actions in enforcing and employing unconstitutional customs, and practices with knowledge of the horrible consequences, including death, assaults, inadequate medical care, and inhumane living conditions which were occurring as a result of these policies, practices, and customs showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against Defendant Allen in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter said Defendant from repeating his conduct.

288.

Defendant Allen's actions in acting deliberately indifferent as to the training, supervision, hiring, and staffing of Jail staff with knowledge of the horrible

consequences, including death, assaults, inadequate medical care, and inhumane living conditions which were occurring as a result of this inadequate training, supervision, hiring, and staffing showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against Defendant Allen in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter said Defendant from repeating his conduct.

289.

Defendant Allen's actions in supervising Defendant Clifton and allowing her to work unsupervised with knowledge that Defendant Clifton could not uphold the oath and was likely to cause harm to inmates showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against Defendant Allen in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter said Defendant from repeating his conduct.

290.

Defendant Clifton's actions in placing Plaintiff in the high-risk housing unit and failing to supervise the inmates in this housing unit knowing that an attack

such as Plaintiff's was certain to occur showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against Defendant Clifton in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Defendant Clifton from repeating her conduct.

291.

Defendant Beaman's actions in placing Plaintiff in the high-risk housing unit and failing to supervise the inmates in this housing unit knowing that an attack such as Plaintiff's was certain to occur showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff to recover punitive damages against Defendant Beaman in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Defendant Beaman from repeating their conduct

292.

Defendant Jones's actions in choosing not to have Plaintiff taken to the hospital even though Plaintiff had become severely injured showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiff

to recover punitive damages against Defendant Jones in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Defendant Jones from repeating their conduct.

293.

Defendant Allen, Defendant Clifton, Defendant Beaman, and Defendant Jones acted with the specific intent to cause harm in that Said Defendants desired to cause the consequences of their actions and/or knew that the consequences of their actions were substantially certain to result.

294.

Wherefore, Plaintiff is entitled to recover punitive damages against Defendant Allen, Defendant Clifton, Defendant Beaman, and Defendant Jones as determined by the enlightened conscience of impartial jurors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for damages and requests from the Court:

a. That summons and process issue as required by law;

b. To allow a trial by jury on all issues so triable;

c. That judgment issue in favor of Plaintiff and against Defendants on all counts of Plaintiff's Complaint;

d. To award Plaintiff compensatory damages against all Defendants;

e. To grant costs of this action, interest, and attorneys' fees per 42 U.S.C. § 1988;

f. That judgment issue in favor of Plaintiff and against Defendants awarding the Plaintiff general, special, and compensatory damages, including but not limited to past, present, and future physical and mental pain and suffering, extreme mental distress, past, present, and future medical bills, and other necessary expenses in an amount to be proven at trial;

g. That judgment issue in favor of Plaintiff and against Defendant Allen, Defendant Clifton, Defendant Beaman, and Defendant Jones awarding Plaintiff punitive damages in an amount determined at trial by the enlightened conscience of a fair and impartial jury; and,

h. To award further relief as the Court deems equitable, proper, and just.

Respectfully submitted this 22nd day of May, 2025.

ERIC J. HERTZ, P.C.

By: */s/ Alex S. Hertz*
ERIC J. HERTZ
GA State Bar No. 349501
*hertz@hertz-law.com*
ALEX S. HERTZ
Georgia Bar No. 420971
*Alex@hertz-law.com*

*Counsel for Plaintiffs*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
Tel: (404) 577-8111
Fax: (404) 577-8116

**EXHIBIT A**

# ERIC J. HERTZ, P.C.
## *Trial Lawyers*

May 22, 2024

*Via Fed Ex Overnight Delivery,*
*Return Receipt No. 8182 4056 2542*
*U.S. First Class Mail,*
*Return Receipt No.70211970 0000 3980*
*5279*
Clayton County Sheriff's Office
c/o Sheriff Levon Allen
9157 Tara Boulevard,
Jonesboro, GA 30236

*Via Fed Ex Overnight Delivery,*
*Return Receipt No. 8182 4056 2564*
*U.S. First Class Mail,*
*Return Receipt No.7021 1970 0000 3980*
*5309*
Clayton County Board of Commissioners
c/o Chairman Jeffrey E. Turner
Clayton County Administration,
112 Smith Street, Annex 1
Jonesboro, GA 30236

*Via Fed Ex Overnight Delivery,*
*Return Receipt No. 8182 4056 2510*
*U.S. First Class Mail,*
*Return Receipt No. 7021 1970 0000 3980*
*5293*
Clayton County Jail
c/o Sheriff Levon Allen
9157 Tara Boulevard,
Jonesboro, GA 30236

RE:  **NOTICE OF CLAIM /ANTE-LITEM NOTICE & SETTLEMENT DEMAND**
**PURSUANT TO O.C.G.A. § 36-11-1**

| | |
|---|---|
| **Our Client:** | **Isaiah Birts** |
| **Defendants:** | **Clayton County, Georgia; Clayton County Sheriff Levon Allen in his official and individual capacity; Tabitha S. Clifton in her official and individual capacity; Jessica Castellanos in her official and individual capacity; Clayton County Board of Commissioners; Defendant Officers whose identities have not yet been ascertained.** |
| **Incident Dates:** | **On or Around May 25, 2023-June 04, 2023** |
| **Loss Dates:** | **On or Around May 25, 2023-June 04, 2023** |
| **Location:** | **Clayton County Jail, in Clayton County, Georgia** |
| **Extent of Injury:** | **Multiple Stab Wounds, Physical and Mental Pain and Suffering, and permanent physical injury, General and Special damages, Pain and Suffering, Medical Bills, and Deprivations of Constitutional Rights** |
| **Legal Claims:** | **Violations of 42 U.S.C. § 1983, substantive due process violations, violations of 42 U.S.C. § 1988, deliberate indifference, violations of Americans with Disability Act, *Monell* and *Canton* claims for training, discipline, and supervision, federal and state-law claims for personal injuries, negligence,** |

Page **1** of **7**

**assault and battery, false imprisonment, intentional infliction of emotional distress, permanent disfiguring injuries, mental and physical pain and suffering, punitive damages, attorney's fees, and costs of litigation as well as other claims outlined below.**

Dear Sheriff Levon Allen and Chairman Jeffery Turner:

      Our law firm, along with Benjamin Crump, PLLC, represents Isaiah Birts. Upon information and belief, Isaiah Birts was in the custody of the Clayton County Jail when he was attacked, beaten, and stabbed by several inmates as part of an assault orchestrated by former Officer Tabitha S. Clifton. Upon information and belief, the attacking inmates attained illegal contraband including weapons from former Officer Tabitha S. Clifton and former Jail Nurse Jessica Castellanos. After the attack was discovered, former Officer Tabitha S. Clifton was fired from and arrested by the Clayton County Sheriff's Office on May 26, 2023 for violation of the oath of a public officer as well as furnishing contraband to inmates. Ms. Castellanos was arrested for obstructing an officer and furnishing prohibited items to inmates on May 26, 2023. As a result of the vicious attack, Mr. Birts sustained 15-20 stab wounds to areas all over his body including his head, neck, face, kidney, legs, and back. In addition to the orchestrated attack and the illegal contraband which facilitated this attack, Mr. Birts serious medical needs were disregarded by Clayton County Jail officials. Mr. Birts was not taken to the hospital immediately after the attack. Rather, he was taken to the infirmary the next day. This letter hereby serves as Notice of Claim pursuant to O.C.G.A. § 36-11-1 for the injuries Mr. Birts suffered due to the negligence and constitutional violations described herein. This letter constitutes a statement made in the course of efforts to settle or compromise claims and will only be admissible following judgment in Plaintiffs' favor as to attorney fees.

      Mr. Birts was 22 years old when he was arrested and taken into the custody of the Sheriff's Office at Clayton County Jail. Mr. Birts was taken to jail for drug charges and was 5'4'' 124 pounds. Upon information and belief, on or about May 25, 2023, former Clayton County Correctional Officer Clifton moved Mr. Birts from his housing unit to a high-risk unit with knowledge that Mr. Birts would be attacked and maimed by violent inmates. At some point after Ms. Clifton moved Mr. Birts into the high-risk unit, Mr. Birts was overpowered by several inmates, beaten, stabbed, and maimed. Mr. Birts sustained 15-20 stab wounds to his head, face, neck, kidney, legs, and back. Upon information and belief, the violent attackers attained illegal contraband and/or the weapons used to attack Mr. Birts from Ms. Clifton and former Jail Nurse Jessica Castellanos.

      At some point after the attack, on May 26, 2023, Clayton County Officer R. Jones discovered Mr. Birts at the section 5 door with "a cut face and a bruised eye". According to Officer R. Jones, Mr. Birts said he needed medical help, so R. Jones took Mr. Birts to the infirmary. In spite of the fact that Mr. Birts suffered from multiple lacerations, bruises, and stab wounds, Mr. Birts was not rushed to the hospital. Mr. Birts later filed a grievance within all applicable timing and procedural requirements in which he took issue with the fact that he was not taken to the hospital after the attack. Mr. Birts also complained in his grievance that the investigation into his attack was insufficient. At the infirmary, Providers noted that Mr. Birts suffered from multiple lacerations and stab wounds and sutured some of Mr. Birts's wounds. Providers noted lacerations

to Mr. Birts's back, face, and right shoulder in particular. Upon information and belief, Mr. Birts was discharged back to the general population on or about May 28, 2023.

Upon information and belief, after the attack, Ms. Clifton was arrested and fired for orchestrating the attack on Mr. Birts as well as for providing inmates with illegal contraband. Ms. Clifton was charged with one count of violation of the oath of a public officer and one count of giving guns, drugs, or alcohol to inmates. Upon information and belief, Ms. Castellanos was arrested and fired for providing inmates with the weapons and/or contraband which was used to assault and maim Mr. Birts. Upon information and belief, Ms. Castellanos was charged with one count of giving guns, drugs, or alcohol to inmates and one count of obstructing an officer.

Tragically, this was not an isolated incident. Clayton County Jail has been engulfed in controversy over recent years—and its inmates have suffered as a result. At least eight employees were arrested at Clayton County Jail in 2023.

On the same day that Mr. Birts was attacked, another former officer, Sean Hollinshead was arrested and fired for orchestrating an attack on an inmate, in which the inmate was brutally and viciously beaten and stabbed by a group of inmates. Upon information and belief, Mr. Hollinshead was charged with violating the oath of a public officer, aggravated assault, criminal negligence, and criminal battery. In response to this incident, Sheriff Levon Allen said, "Inmate Hollinshead committed the offense of Criminal Negligence & Violation of his Oath when he knowingly, recklessly, and without disregard for the safety of the inmate placed him in a high-risk housing unit, causing the inmate to receive life-threatening injuries and did not render aid as the beating and stabbing were taking place".

Upon information and belief, earlier in May of 2023, guard Desiree Lowery was accused of smuggling contraband to detainees. Ms. Lowery was subsequently fired on October 8, 2023. In response to this, the Sheriff's Office said that she "exchanged her employee badge number for an inmate LE number, exchanged her officer title for an inmate title, exchanged her blue uniform for an orange uniform, and exchanged her clean record for four felony charges.".

In June of 2023, contractor Iyana Dixon was charged with swiping a detainee's credit card while shopping at Macy's. A fellow contractor, Sarai Ali, was also arrested and charged with being a party to the crime and obstructing or hindering law enforcement officers.

In July of 2023, jail nurse Geraldine Layura Moore was accused of dropping a plastic bag of Percocet pills in a trash bin for detainees to retrieve. Ms. Moore was arrested and charged with crossing a guard line with drugs, violation of Georgia's controlled substance act, drug possession, possession of a firearm during the commission of a crime and possession of drug-related objects.

In the latter half of 2023, Clayton County Correctional Officer Jalen Clausell facilitated an assault on an inmate by allowing the assaulting inmates to have access to the victim inmate's cell. According to the investigation, the inmates planned to cause "physical bodily injury" to the victim, and Clausell intentionally let the inmates into the cell to hurt the victim. Mr. Clausell was arrested and stripped of his officer title. He was charged with conspiracy to commit aggravated assault, reckless conduct and violation of oath by a public officer.

According to reports from around November of 2023, a Clayton County Sheriff's correctional officer Delvan Jones allegedly struck an inmate seven times unprovoked at the Clayton County Jail. Mr. Jones faced two separate charges for his crimes, and his POST record showed he took courses in de-escalation techniques and use of force in 2022. He was the second Clayton County correctional officer to face charges in November and the ninth Clayton County Jail correctional officer or employee charged with a crime while on the job in the past six months at the time of his attack.

Sheriff Allen won a runoff election in April to replace Sheriff Victor Hill, who began serving an 18-month sentence in an Arkansas prison in May for violating the civil rights of inmates by strapping them into restraint chairs as punishment. Allen, who Hill called his godson, was promoted from chief deputy to interim sheriff in late December.

Five days before Sheriff Allen was elected, a Clayton grand jury issued a 64-count racketeering indictment against jail detainees, alleging they, along with others outside the building, coordinated to run the lockup as a mini-criminal enterprise involving the exchange of money, drugs, weapons and bribes. Inmates' families were allegedly coerced to pay thousands of dollars through cash apps, some of it used to purchase contraband in the jail. According to a press release sent to the media, more than 100 arrests were made in connection to the investigation into Clayton County Jail. The crimes committed by those arrested included crossing guard lines, extortion, aggravated assault, aggravated battery, kidnapping, possession of narcotics with the intent to distribute, possession of prohibited items by inmates, bribery, and others. These charges were forwarded to the Clayton County District Attorney's Office, resulting in a 65-count indictment under the Racketeering Influenced and Corrupt Organizations Act (R.I.C.O.). All of the alleged crimes occurred under acting Sheriff Boehrer and interim Sheriff Levon Allen when he was running for office, but neither officer was charged in the indictment. Clayton District Attorney Tasha Mosley has said she expects more charges as investigators dig deeper into the alleged activity, which she said includes ties to gangs.

According to reports from around September 2023, Georgia's senior U.S. senator and Human Rights Subcommittee Chairman has called on the Department of Justice to open an investigation in the Clayton County Jail. Senator Jon Ossoff says he has heard several credible reports describing deplorable conditions inside the facility. According to Senator Ossoff, "This is a serious issue that requires immediate and high-level attention,". According to Senator Ossoff, "There are credible reports and significant evidence, in my view, that conditions in the jail are inhumane, are dangerous, and put lives at risk,". In a September 7th two-page letter to U.S. Attorney General Merrick Garland, the senator said conditions are at a dire and crucial position. Senator Ossoff's call for a federal probe came after the DOJ prosecuted then-Clayton County Sheriff Victor Hill, who was found guilty in October of 2022 of violating the civil rights of jail detainees.

Not only has Clayton County been subject to potential as well as ongoing investigations, but it has also been subject to prior litigation by inmates. According to reports, the family of a man who died in the Clayton County Jail in November 2022 filed a lawsuit against Clayton County, Sheriff Levon Allen, multiple deputies, and medical providers after multiple deputies placed their full body weight on the man for 20 minutes leading to his death. The Clayton County Medical

Examiner's Office determined that the man suffered a cardiac arrest and ruled his death a homicide. The deputies involved were later fired, but they were not indicted in inmate's death.

Incidents of violence were something close to the norm at Clayton County Jail. Numerous inmates have been killed or attacked at the jail. According to reports from around January of 2023, five Clayton County inmates were facing charges after a cellphone video surfaced of them allegedly attacking another inmate in what believed to be a gang-related incident. The video, which showed inmates "jumping and assaulting" the victim, was brought to the attention of Sheriff Levon Allen by the victim's mother.

Clayton County Sheriff Levon Allen said in a press release in November of 2023 that inmate Jaquez Jackson "brutally beat his cell mate with his bare hands, viciously punching, kicking and slamming his head on the toilet, murdering him simply because of the color of his skin." The cellmate was Carlos Zegarro-Arroyo, who was in jail on non-violent charges. According to the sheriff's office, Jackson stated several times he did not like Mexican/Hispanics and wanted to kill them. Jackson was charged with murder, malice murder, aggravated assault and starting a penal riot, according to the sheriff's office.

Clayton County Jail opened in 2000, and it's been deteriorating ever since. According to former corrections officer, Dalton Lowery, "When I tell you it's bad, there are doors wide open. There are individuals who can be attacked on site, whether you have an officer there or not,".

Clayton County Jail was experiencing severe overcrowding problems during all relevant times to Mr. Birts's attack. The Clayton County Jail currently houses approximately 1900 inmates, which is nearly 200-400 inmates over capacity, placing inmates on the floor and three in each cell. According to Sheriff Allen, "We can house comfortably two inmates to a bed, about 1,500 to 1,540 inmates," and "Our daily capacity is roughly about 1,800 to 1,900 inmates."

Clayton County Jail also experiences systematic problems with homemade as well as smuggled weapons. As of mid-October, 2023, according to Sheriff Allen, "All of our stabbings that have occurred based on something they have broken away from the actual facility,". According to Sheriff Allen, while holding a grab bar in the bathroom, "The inmates were able to manipulate this from the handicapped room in the showers,". Sheriff Allen continued, "When you remove this and work this on the wall, this becomes a long sword, a long machete," And the contraband isn't just from inside the jail. According to Allen, after asserting that people would then break into the jail to give inmates contraband, he said, "Like Mission Impossible, they were able to cut the glass, poke the hole through and have a hole,". Aside from the communal areas inside the jail, the door locks and cells also show age.

Defendants' actions amount to deliberate indifference to Mr. Birts's safety and well-being as well as an unconstitutional failure to protect Mr. Birts from other inmates' violent attacks. Not only do the Defendants' actions amount to deliberate indifference, but they also arise to level of intentional misconduct which caused deprivations of Mr. Birts's constitutional rights protected under the 8th and/or 14th Amendments of the Constitution.

After Mr. Birts was attacked, Defendants' actions in, including but not limited to, not taking Mr. Birts to a hospital and waiting an unconstitutional amount of time to care for his stab wounds amounted to deliberate indifference to Mr. Birts's serious medical needs. These actions deprived Mr. Birts of his constitutionally protected rights under the 8th and/or 14th Amendments of the Constitution.

Defendants also employed unconstitutional policies and/or customs which led to Mr. Birts's attacks in the face of systematic unconstitutional conditions. Defendants also improperly trained, hired, and retained their officers which proximately caused the attack on Mr. Birts. The policies, customs and actions taken by Defendants as shown above caused Mr. Birts to suffer general and special damages, pain and suffering, and deprivations of Constitutional rights.

**In view of the foregoing, notice is hereby provided for the following claims:**

- **42 USC § 1983 CLAIM FOR VIOLATING MR. BIRTS'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT;**

- **42 USC § 1983 CLAIM FOR VIOLATING MR. BIRTS'S SUBSTANTIVE DUE PROCESS RIGHTS;**

- **42 USC § 1983 CLAIM FOR DELIBERATE INDIFFERENCE AND FAILURE TO PROTECT;**

- **42 USC § 1983 CLAIM FOR FAILURE TO INTERVENE TO PREVENT CIVIL RIGHTS VIOLATIONS;**

- **42 USC § 1983 CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS;**

- **42 U.S.C. § 1983 (Monell Liability) CLAIM;**

- **DEFENDANTS HAVE ENGAGED IN A CUSTOM AND POLICY THAT OBSCURES THE LEVEL OF HARM EXISTENT BY IGNORING VIOLENCE AND OR INACCURATELY CLASSIFYING VIOLENT ACTS AND CAUSES OF DEATH THAT OCCUR IN CLAYTON COUNTY JAIL;**

- **SUPERVISORY LIABILITY (Canton Liability) CLAIM;**

- **VIOLATIONS UNDER THE AMERICANS WITH DISABILITIES ACT; and**

- **STATE-LAW CLAIMS FOR NEGLIGENCE, ASSAULT AND BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, PERSONAL INJURY, PUNITIVE DAMAGES, AND PAIN AND SUFFERING.**

### OFFER TO COMPROMISE CLAIMS

This is a one-time, time-limited offer on behalf of my client to settle this matter. In exchange for the tender of a total 20 Million Dollars (**$20,000,000.00**), Mr. Birts will release all claims against the above-named Defendants and their employees and agents.

This is a straightforward case of clear liability with wanton and indifferent conscious-shocking conduct for which a jury will no doubt determine requires severe financial penalty. Defendants have thirty (30) days to accept this offer. If this offer is not timely accepted, our client will file suit and seek a judgment for these claims in an amount that far exceeds this demand.

Very truly yours,

**ERIC J. HERTZ, P.C.**

Eric J. Hertz, Esq.

Encs.
ejh/jdh

**FedEx** Express

Package **US Airbill**

FedEx Tracking Number **8182 4056 2542**

Form ID No. **0215**

MUR3

**Sender's Copy**

**1 From** *Please print and press hard.*

Date **9/22/24**

Sender's FedEx Account Number **4312-0368-5**
SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name **Jasmine Hewlett**  Phone **( 404 ) 577-8111**

Company **ERIC J HERTZ PC**

Address **8300 DUNWOODY PL STE 210**
Dept./Floor/Suite/Room

City **ATLANTA**   State **GA**   ZIP **30350-3323**

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.
**Bints** OPTIONAL

**3 To**
Recipient's Name **C/O Sheriff Levon Allen**  Phone **( )**

Company **Clayton County Sheriff's Office**

Address **9157 Tara Boulevard**

We cannot deliver to P.O. boxes or P.O. ZIP codes.
Dept./Floor/Suite/Room

**Hold Weekday**
FedEx location address
REQUIRED, **NOT available for** FedEx First Overnight.

Address
Use this line for the HOLD location address or for continuation of your shipping address.

**Hold Saturday**
FedEx location address
REQUIRED, **Available ONLY for** FedEx Priority Overnight and FedEx 2Day to select locations.

City **Jonesboro**   State **GA**   ZIP **30236**

0141103103

**4 Express Package Service**  *To most locations.*

*Packages up to 150 lbs.*
*For packages over 150 lbs., use the FedEx Express Freight US Airbill.*

**Next Business Day**

☐ **FedEx First Overnight**
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☒ **FedEx Priority Overnight**
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ **FedEx Standard Overnight**
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ **FedEx 2Day A.M.**
Second business morning.*
Saturday Delivery NOT available.

☐ **FedEx 2Day**
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ **FedEx Express Saver**
Third business day.*
Saturday Delivery NOT available.

**5 Packaging**  *Declared value limit $500.*

☒ **FedEx Envelope***   ☐ **FedEx Pak***   ☐ **FedEx Box**   ☐ **FedEx Tube**   ☐ **Other**

**6 Special Handling and Delivery Signature Options**  *Fees may apply. See the FedEx Service Guide.*

☐ **Saturday Delivery**
**NOT available for** FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☒ **No Signature Required**
Package may be left without obtaining a signature for delivery.

☐ **Direct Signature**
Someone at recipient's address may sign for delivery.

☐ **Indirect Signature**
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
**One box must be checked.**

☒ **No**   ☐ **Yes** As per attached Shipper's Declaration.   ☐ **Yes** Shipper's Declaration not required.   ☐ **Dry Ice** Dry Ice, 9, UN 1845 ___ x ___ kg

☐ **Cargo Aircraft Only**

Restrictions apply for dangerous goods — see the current FedEx Service Guide.

**7 Payment**  *Bill to:*

☒ **Sender**
Acct. No. in Section 1 will be billed.

Enter FedEx Acct. No. below
☐ **Recipient**   ☐ **Third Party**

FedEx Acct. No.

This airbill can be used only when billing to a FedEx account number. For cash, check, or credit card transactions, please go to a staffed shipping location.

Total Packages **1**   Total Weight ___ lbs.   Total Declared Value† $ ___ .00

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994-2022 FedEx • PRINTED IN U.S.A.

**611**



**Ship it. Track it. Pay for it. All online.**
Go to **fedex.com**.

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to fedex.com.*

**Definitions** On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms** By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill** You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment** Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

**Limitations On Our Liability And Liabilities Not Assumed**

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  – for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  – if you or the recipient violates any of the terms of our Agreement.

  – for loss of or damage to shipments of prohibited items.

  – for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

**Declared Value Limits**

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim** YOU MUST MAKE ALL CLAIMS IN WRITING or online at fedex.com and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect** We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection** We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services** C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included** A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee** In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

Part 163134 • Rev. Date 4/22

 Sign Up or Log In  

Tracking ID: 818240562542     Local Scan Time 

 SHOPRUNNER by FedEx.
Ready to shop again?
Get exclusive deals at your favorite stores.    SHOP NOW

 This is an older tracking ID. We're displaying all of the information we have.

| | |
|---|---|
| **Tracking ID** | 818240562542 |
| **Delivered** | Friday, 5/24/24, 9:26 AM |
| **Delivery Status** | Delivered |
| **From** | ATLANTA, GA, US |
| **To** | JONESBORO, GA, US |
| **Ship date** | Thursday, 5/23/24 |
| **Service** | FedEx Priority Overnight |
| **Special handling** | Deliver Weekday |

 **Obtain proof of delivery**

**OUR COMPANY**

About FedEx
Our Portfolio
Investor Relations
Careers

FedEx Blog
Corporate Responsibility
Newsroom
Contact Us

**MORE FROM FEDEX**

FedEx Compatible
FedEx Developer Portal
FedEx Logistics
ShopRunner

**LANGUAGE**

United States

**FOLLOW FEDEX** 

© FedEx 1995-2025

Site Map | Terms of Use | Privacy & Security | Ad Choices

May 14, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818240562542

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | T.BEATLES | Delivery Location: | 9157 TARA BLVD |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | JONESBORO, GA, 30236 |
| | | Delivery date: | May 24, 2024 09:26 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818240562542 | Ship Date: | May 23, 2024 |
| | | Weight: | |

Recipient:
C/O SHERIFF LEVON ALLEN, CLAYTON COUNTY SHERIFFS OFFICE
9157 TARA BLVD
JONESBORO, GA, US, 30236

Shipper:
JASMINE HEWLETT, ERIC J HERTZ PC
8300 DUNWOODY PL STE 210
ATLANTA, GA, US, 303503323

Reference                    BIRTS



Thank you for choosing FedEx

**FedEx Express**

Package
US Airbill

FedEx Tracking Number: 8182 4056 2564

Form ID No. 0215

MUR3

**Sender's Copy**

**1 From** *Please print and press hard.*

Date 5/22/24

Sender's FedEx Account Number 4312-0368-5

SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name Jasmine Hewlett

Phone ( 404 ) 577-8111

Company ERIC J HERTZ PC

Address 8300 DUNWOODY PL STE 210

Dept./Floor/Suite/Room

City ATLANTA    State GA    ZIP 30350-3323

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.

Births

**3 To**

Recipient's Name c/o Chairman Jeffrey E. Turner    Phone ( )

Company Clayton County Board Of Commissioners

Address Clayton County Administration
We cannot deliver to P.O. boxes or P.O. ZIP codes.
Dept./Floor/Suite/Room

Address 112 Smith St. Annex 1
Use this line for the HOLD location address or for continuation of your shipping address.

City Jonesboro    State GA    ZIP 30236

0141103103

**Ship it. Track it. Pay for it. All online.**
Go to **fedex.com**.

**4 Express Package Service** *To most locations.*

Packages up to 150 lbs.
For packages over 150 lbs., use the FedEx Express Freight US Airbill.

**Next Business Day**

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☒ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5 Packaging** *Declared value limit $500.*

☒ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6 Special Handling and Delivery Signature Options** Fees may apply. See the FedEx Service Guide.

☐ Saturday Delivery
NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☒ No Signature Required
Package may be left without obtaining a signature for delivery.

☐ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
One box must be checked.

☒ No

☐ Yes
As per attached Shipper's Declaration.

☐ Yes
Shipper's Declaration not required.

☐ Dry Ice
Dry Ice, 9, UN 1845 _____ x _____ kg

☐ Cargo Aircraft Only

Restrictions apply for dangerous goods — see the current FedEx Service Guide.

**7 Payment** *Bill to:*

☒ Sender
Acct. No. in Section 1 will be billed.

Enter FedEx Acct. No. below

☐ Recipient    ☐ Third Party

FedEx Acct. No.

| Total Packages | Total Weight | Total Declared Value† |
|---|---|---|
| 1 | _____ lbs. | $ _____ .00 |

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994–2022 FedEx • PRINTED IN U.S.A.

611

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to fedex.com.*

**Definitions**  On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms**  By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill**  You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment**  Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

**Limitations On Our Liability And Liabilities Not Assumed**

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  - for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  - if you or the recipient violates any of the terms of our Agreement.

  - for loss of or damage to shipments of prohibited items.

  - for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

**Declared Value Limits**

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim**  YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect**  We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection**  We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services**  C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included**  A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee**  In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

  Sign Up or Log In 

**Tracking ID:** 818240562564 

Local Scan Time ⌄


SHOPRUNNER by FedEx.
**Ready to shop again?**
Get exclusive deals at your favorite stores.
SHOP NOW

 This is an older tracking ID. We're displaying all of the information we have.

| | |
|---|---|
| **Tracking ID** | 818240562564 |
| **Delivered** | Friday, 5/24/24, 9:45 AM |
| **Delivery Status** | Delivered |
| **From** | ATLANTA, GA, US |
| **To** | JONESBORO, GA, US |
| **Ship date** | Thursday, 5/23/24 |
| **Service** | FedEx Priority Overnight |
| **Special handling** | Deliver Weekday |

⬇ **Obtain proof of delivery**

**OUR COMPANY**

About FedEx
Our Portfolio
Investor Relations
Careers

FedEx Blog
Corporate Responsibility
Newsroom
Contact Us

**MORE FROM FEDEX**

FedEx Compatible
FedEx Developer Portal
FedEx Logistics
ShopRunner

**LANGUAGE**

 United States

**FOLLOW FEDEX** 

© FedEx 1995-2025



May 14, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818240562564

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | B.LEVERETTE | Delivery Location: | 112 SMITH ST |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | JONESBORO, GA, 30236 |
| | | Delivery date: | May 24, 2024 09:45 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818240562564 | Ship Date: | May 23, 2024 |
| | | Weight: | |

**Recipient:**
C/O CHAIRMAN JEFFREY E TURNER, CLAYTON COUNTY BOARD OF
COMMIS
112 SMITH ST ANNEX 1 CLAYTON C
JONESBORO, GA, US, 30236

**Shipper:**
JASMINE HEWLETT, ERIC J HERTZ PC
8300 DUNWOODY PL STE 210
ATLANTA, GA, US, 303503323

**Reference**                BIRTS



Thank you for choosing FedEx

**FedEx Express**

Package **US Airbill**

FedEx Tracking Number: 8182 4056 2510

Form ID No. 0215

MUR3

**Sender's Copy**

**1 From** *Please print and press hard.*

Date: 5/22/24

Sender's FedEx Account Number: 4312-0368-5

SENDER'S FEDEX ACCOUNT NUMBER ONLY

Sender's Name: Jasmine Hewlett    Phone ( 404 ) 577-8111

Company: ERIC J HERTZ PC

Address: 8300 DUNWOODY PL STE 210

Dept./Floor/Suite/Room

City: ATLANTA    State: GA    ZIP: 30350-3323

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.

Briants

**3 To**

Recipient's Name: C/O Sheriff Levon Allen    Phone ( )

Company: Clayton County Jail

Address: 9157 Tara Boulevard    Dept./Floor/Suite/Room

We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address: Use this line for the HOLD location address or for continuation of your shipping address.

City: Jonesboro    State: GA    ZIP: 30236

0141103103

**Ship it. Track it. Pay for it. All online.**
Go to fedex.com.

**4 Express Package Service** *To most locations.*

Packages up to 150 lbs.
For packages over 150 lbs., use the FedEx Express Freight US Airbill.

**Next Business Day**

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☒ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5 Packaging** *Declared value limit $500.*

☒ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6 Special Handling and Delivery Signature Options** Fees may apply. See the FedEx Service Guide.

☐ Saturday Delivery
NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☒ No Signature Required
Package may be left without obtaining a signature for delivery.

☐ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
One box must be checked.

☒ No    ☐ Yes As per associated Shipper's Declaration.    ☐ Yes Shipper's Declaration not required.    ☐ Dry Ice Dry Ice, 9, UN 1845 ___ x ___ kg

Restrictions apply for dangerous goods — see the current FedEx Service Guide.    ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☒ Sender Acct. No. in Section 1 will be billed.

Enter FedEx Acct. No. below
☐ Recipient    ☐ Third Party

FedEx Acct. No.

This airbill can be used only when billing to a FedEx account number. For cash, check, or credit card transactions, please go to a staffed shipping location.

Total Packages: 1    Total Weight: ___ lbs.    Total Declared Value† $ ___ .00

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994-2022 FedEx • PRINTED IN U.S.A.

611

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to **fedex.com**.*

**Definitions**  On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms**  By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill**  You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment**  Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

## Limitations On Our Liability And Liabilities Not Assumed

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  – for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  – if you or the recipient violates any of the terms of our Agreement.

  – for loss of or damage to shipments of prohibited items.

  – for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

## Declared Value Limits

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim**  YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect**  We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection**  We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services**  C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included**  A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee**  In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

  Sign Up or Log In 

**Tracking ID:** 818240562510  

Local Scan Time ⌄

 SHOPRUNNER by FedEx
**Ready to shop again?**
Get exclusive deals at your favorite stores.    SHOP NOW


 ⓘ  This is an older tracking ID. We're displaying all of the information we have.

| | |
|---|---|
| **Tracking ID** | 818240562510 |
| **Delivered** | Friday, 5/24/24, 9:26 AM |
| **Delivery Status** | Delivered |
| **From** | ATLANTA, GA, US |
| **To** | JONESBORO, GA, US |
| **Ship date** | Thursday, 5/23/24 |
| **Service** | FedEx Priority Overnight |
| **Special handling** | Deliver Weekday |

⤓ **Obtain proof of delivery**

**OUR COMPANY**

About FedEx
Our Portfolio
Investor Relations
Careers

FedEx Blog
Corporate Responsibility
Newsroom
Contact Us

**MORE FROM FEDEX**

FedEx Compatible
FedEx Developer Portal
FedEx Logistics
ShopRunner

**LANGUAGE**

 United States

FOLLOW FEDEX         

© FedEx 1995-2025

Site Map | Terms of Use | Privacy & Security | Ad Choices

May 14, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 818240562510

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | T.BEATLES | Delivery Location: | 9157 TARA BLVD |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | JONESBORO, GA, 30236 |
| | | Delivery date: | May 24, 2024 09:26 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 818240562510 | Ship Date: | May 23, 2024 |
| | | Weight: | |

**Recipient:**
C/O SHERIFFS LEVON ALLEN, CLAYTON COUNTY JAIL
9157 TARA BVLD
JONESBORO, GA, US, 30236

**Shipper:**
JASMINE HEWLETT, ERIC J HERTZ PC
8300 DUNWOODY PL STE 210
ATLANTA, GA, US, 303503323

**Reference**                    BIRTS



Thank you for choosing FedEx